UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALEB ANDERSON,<br><br>          Plaintiff,<br><br>     vs.<br><br>PENINSULA FIRE DISTRICT, ROBERT PHILLIPS, GARY PINI, and DOES 1 through 50,<br><br>          Defendants. | No. 2:13-cv-01736-TLN-CMK<br><br>**MEMORANDUM AND ORDER** |

The matter is before the Court pursuant to Defendants Peninsula Fire District (the "Fire District"), Robert Phillips ("Phillips"), and Gary Pini's ("Pini") (collectively "Defendants") motion for summary judgment. (ECF No. 23.) Plaintiff Caleb Anderson ("Plaintiff") has opposed the motion. (ECF No. 24.) For the reasons stated below, the motion for summary judgment is granted as to Defendant Fire District, and denied as to Defendants Pini and Phillips.

/ / /

/ / /

/ / /

/ / /

1

**I. Background**[1]

Plaintiff was hired by the Fire District in 2004 as a firefighter paramedic. (Compl. ¶ 7.) At some point in or around 2010, he and others became aware of an accumulation of bat guano in the attic above the living quarters of Fire District's Fire Station # 2. (Compl. ¶ 7.) Plaintiff and another Captain (J.R. Jones) in the Fire District informed the California Division of Occupational Safety and Health ("OSHA"). (Compl. ¶ 7; Pini Dep. at 50:13–23; Plaintiff's Decl. ¶ 1.)

On December 22, 2010, Defendant Phillips issued identical "Letters of Warning" to Plaintiff and Captain Jones, regarding their "negative treatment of Peninsula Fire District Employees." The letters did not describe specific incidents that were the basis for the warnings. At that time, Phillips was the Acting Fire Chief of the Fire District. Later, at the time of Plaintiff's termination in August 2012, Defendant Pini was the Fire Chief and Phillips had become the Chairman of Peninsula Fire District's Board of Directors. (Pini Dep. at 50:13–23; Plaintiff's Decl. ¶ 1 and p. 5–6; Phillips Decl. ¶ 3.)

On June 26, 2012, Plaintiff was notified in writing by Pini that he had been placed on paid administrative leave pending disciplinary action. (ECF No. 23-4 at 19.) By that point, Plaintiff had achieved the rank of Captain. (Plaintiff's Decl. ¶ 1.) Pini and Plaintiff had met in Pini's office at some point in the days prior to discuss Pini's belief that Plaintiff's paramedic license had expired, which was a requirement for the job. (Pini Decl. ¶ 5; Plaintiff's Dep. at 157:14–25, 158:1–3.)

On June 29, 2012, Pini issued a written "Notice of Intent to Discipline and Possible Termination from Peninsula Fire District" to Plaintiff for not keeping a current paramedic license; for not notifying the Fire Chief that his license had expired on May 1, 2012; for continuing to work and accepting pay as a paramedic while he was not licensed; and for not following Pini's

---

[1] Throughout this decision the Court refers to: Plaintiff's complaint ("Compl.", ECF No. 2); Defendant's memorandum in support of motion for summary judgment ("MSJ", ECF No. 24-1); Defendants' statement of undisputed facts and Plaintiff's response ("DSUF", ECF No. 24-1); Plaintiff's statement of undisputed facts and Defendants' response ("PSUF", ECF No. 25-2); transcripts of the depositions ("Dep.") of Plaintiff, Pini, and Phillips (located in excerpts within ECF Nos. 23, 24, and 25); Plaintiff's opposition to the motion for summary judgment ("Opp'n", ECF No. 24); declarations ("Decl.") of Plaintiff, Phillips, and Pini (ECF Nos. 23-4, 23-5, and 24-3); and Pini's supplemental declaration ("Supp. Pini Decl.", ECF No. 25-3). The Court refers to Fire District regulations/policies and notices related to Plaintiff's termination according to their ECF page number.

1  written order on filling out daily log books.  The notice further stated that discipline would take
2  effect on July 15, 2012, which included: unpaid leave from July 15, 2012 through August 15,
3  2012; demotion to firefighter/paramedic effective August 15, 2012; and if Plaintiff could not
4  produce a valid California and Northern California paramedic license by August 15, 2012, his
5  position with the Fire District would be terminated.  The notice also stated Plaintiff could appeal
6  the action in writing within 10 days.  (ECF No. 23-4 at 21.)

7  On July 6, 2012 Plaintiff submitted a written appeal which stated, among other things, that
8  he was dyslexic and needed help filling in his logbooks, and needed to use a word processor.  The
9  appeal also stated: "[T]here was a delay in getting my Paramedic License renewal processed due
10 to a change in CE provider numbers at the state level.  Once I was notified of the issue I did tell
11 Chief Pini that my renewal needed updated CE [Continuing Education] provider numbers from
12 PFD's base hospital.  My Paramedic Licenses has been renewed with NO laps in coverage.
13 Attached you will find a printout from CA EMS Authority showing I have been continually
14 licensed from 3/5/2004 through 6/30/2014."  (ECF No. 23-4 at 25.)

15 On July 18, 2012, Pini notified Plaintiff in writing that his appeal was received and a
16 hearing regarding his discipline was scheduled for July 31, 2012 with Pini.  The notice stated
17 Plaintiff could bring a labor representative and present any new information at the hearing.  (ECF
18 No. 23-4 at 27.)

19 On July 31, 2012, Pini met with Plaintiff and Plaintiff's representative.  (Pini Decl. ¶ 11.)
20 Subsequently, by written decision dated August 2, 2012, Pini stated he intended to uphold and
21 enforce the June 29 notice of intended discipline.  That decision stated Plaintiff could appeal in
22 writing within ten days.  If he appealed, a hearing would be set up with the Peninsula Fire District
23 Board of Directors (the "Board").  (ECF No. 23-4 at 29.)

24 On August 24, 2012, by written letter from Pini, Plaintiff was terminated for the stated
25 reason that he had failed to provide the Fire District with a valid / current paramedic license by
26 the August 15, 2012 deadline, and because he had failed to appeal the August 2, 2012 decision.
27 (ECF No. 23-4 at 19.)
28 / / /

3

**II. Disputed Facts**

A. Plaintiff's license

There were two types of licenses Plaintiff was required to have, a California state paramedic license and a Northern California ("NorCal") license. (Pini Dep. at 15:12–16.) The license at issue in Plaintiff's case was the NorCal license. Someone in Plaintiff's position was required to submit a valid NorCal 202A form, which was the "Paramedic Continuous Accreditation Form," in order to obtain a valid NorCal license. (ECF No. 25-3 at 5–7; Pini Decl. ¶ 1–2.)

Pini states he took issue with the 202A form which Plaintiff submitted, because it had been signed by another firefighter, Toby Beck, who was not authorized to do so. (Pini Dep. at 24:2–11.) According to Pini, the Fire District had no specific written policy "with respect to signing or initialing renewal applications to the Northern California EMS [Emergency Medical Services] authority." (Supp. Pini Decl. ¶ 2.) However, the policy is that "only the District's Fire Chief or a District Captain is the authorized representative for the District to sign a NorCal 202A form." (Supp. Pini Decl. ¶ 2.) This policy "is well known to all District employees and should have been apparent to the Plaintiff as a result of the normal chain of command that occurs in all fire departments." (Supp. Pini Decl. ¶ 3.) The 202A forms submitted by Plaintiff for 2006, 2008, and 2010 were either signed by Pini or a District Captain. (*See* ECF No. 25-3 at 5–7.) Thus, Pini submits that Plaintiff's claim that he did not know who was authorized to initial and sign the NorCal 202A form is unsupportable. (Supp. Pini Decl. ¶ 4.)

Pini testified at his deposition that while Plaintiff was attempting to have his NorCal license validated, Pini talked with a NorCal EMS representative on the phone, and that he told the representative there was a defect in Plaintiff's application. It is not clear, but it appears Pini refers here to the fact that Toby Beck, not a Captain or Fire Chief, signed the NorCal 202A form. Pini believed that the discussion with the NorCal EMS representative resulted in the cancellation of Plaintiff's application.[2] (Pini Dep. at 36:2–19.)

---

[2] The parties also dispute whether there was a problem with Plaintiff's "continuing education number," and the extent to which that number held up Plaintiff being properly licensed. (Plaintiff's Dep. 148:20–152:9; Pini Dep. 14:17–22; PSUF #13.) It is not clear to the Court how that issue fits within the narrative regarding Plaintiff's inability to secure

4

Pini submits that at the hearing on July 31, 2012, Plaintiff "presented no proof that he was accredited with NorCal EMS which was a requirement for his position at Peninsula Fire District. No other documents or arguments were provided at the hearing and the hearing was concluded … The only document that [Plaintiff] presented to me was a Paramedic License issued by the State of California that he had recently received. However, this updated license did not negate the fact that [Plaintiff] had allowed his paramedic license to lapse and that he had worked and received pay as a paramedic without being licensed and failed to notify the Fire Chief of his status in that regard." (Pini Decl. ¶ 11.) Pini states that, ultimately, the Fire District never received proof that Plaintiff had been properly licensed. (Pini Decl. ¶ 12.)

Plaintiff could not recall at his deposition whether any other person besides a Captain or Fire Chief had signed off on a 202A or other NorCal EMS form in the past. (Plaintiff's Dep. at 29–31:10.) However, Plaintiff states that having compliance documents signed off by a paramedic like Toby Beck was the practice in the Fire District. (Plaintiff's Decl. ¶ 4.) Plaintiff directs the Court to Pini's testimony that he did not know whether NorCal had any requirement regarding whether only a Captain could sign a 202A form (apparently the implication being that it was not NorCal who sought to block Plaintiff's validation, but Pini). Pini also testified he had never told anyone that Beck was not qualified to sign off on a NorCal application. (Pini Dep. at 25:11–18.)

Plaintiff characterizes Pini's actions as deliberately blocking his accreditation. Plaintiff states that all documentation needed to obtain his NorCal license had been provided to NorCal EMS and the license would have been issued before the August 15th deadline but for Pini's actions.[3] (Plaintiff's Decl. ¶ 5.) Plaintiff also states in the complaint that on August 8, 2012, he received a letter from NorCal EMS accusing him of a fraudulent attempt to renew his paramedic license, and that at that time, Plaintiff first learned that Beck was not authorized to sign the

---

a valid NorCal license by August 15, 2012, or whether that is a relevant issue independent of who signed off on Plaintiff's 202A forms.

[3] Plaintiff takes the position at points that his license did not lapse (DSUF #5), apparently relative to his California state license. There are copies of a valid state license attached to the July 6, 2012 grievance form. (ECF No. 23–6 at 29.)

necessary NorCal forms.  (Compl. ¶ 10.)  Plaintiff states it normally requires NorCal EMS 30 days to process applications, and thus he received the letter from NorCal EMS shortly before the August 15th deadline set up by Pini (the point apparently being that, by that point, Plaintiff did not have enough time to comply).  (Compl. ¶ 10.)

### B. Logbooks

Regarding the charge that Plaintiff had failed to fill out logbooks correctly, Plaintiff states he was dyslexic and needed help filling out his logbooks.  (DSUF #7.)   Pini testified that he learned Plaintiff was dyslexic after Plaintiff was placed on administrative leave.  Pini testified: "while [Plaintiff] was still employed he never told me." (Pini Dep. at 43:16–23.)  However, Pini testified that he knew by the time of the August 2, 2012 meeting that Plaintiff "had difficulty writing." (Pini Dep. 44:8–10.)  Pini also testified that the "willfull disobedience" charge in the June 29, 2012 "Notice of Intent to Discipline and Possible Termination" referred to "not following the order of – the verbal order or the memo order for the logbook." (Pini Dep. at 44:21–25.)  Pini testified that he had given Plaintiff "written memos that they are to fill out their own logbooks." (Pini Dep. at 43:16–23.)

### C. Reasons for Plaintiff's termination

Plaintiff's position is that Defendants Pini and Phillips sought to fire Plaintiff because he was active on behalf of the Peninsula Professional Firefighters Association Union, and because he had in the past complained to OSHA about conditions at the fire station.  (Plaintiff's Decl. ¶ 1.)  Plaintiff states he was a model employee with no other incidents of discipline and was above average in his evaluations.  (Plaintiff's Decl. ¶ 9.)  Presumably, Defendants' position is that the main reason for firing Plaintiff was the failure to maintain a valid license as stated in his notice of termination.

### D. Pini and Phillips' impartiality

Plaintiff's position is that Pini and Phillips were not neutral evaluators of whether he should be terminated because of their antagonism toward his union activities and his complaints to OSHA.  (Plaintiff's Decl. ¶ 8.)  It is not disputed that Phillips knew Plaintiff had contacted OSHA and that Phillips had some type of discussion with Pini about Plaintiff's discipline prior to

Plaintiff's termination.[4]  (PSUF #7–8; Phillips Dep. at 8:5–14, 31:8–14.)

Phillips also testified (it appears in reference to a conversation that took place after Plaintiff's complaint to OSHA): "I had a conversation with [Plaintiff] when I told him I would appreciate it more that he would be up front and talk to us, that I was aware that people were making phone calls and doing things behind the scenes, I didn't know who they were.  I thought that he, as a Captain, I would have that conversation with him that I was available if he needed to air a grievance or complaint of any kind … That [conversation] was in reference to our whole situation at the time."  (Phillips Dep. at 41:15–24.)  However, Phillips denied having a part in the decision to terminate Plaintiff, or having a discussion about termination.  (Phillips Dep. at 8:2–4, 10:6–8.)

### E.  Failure to appeal

Defendants submit the following: if Plaintiff had appealed Pini's decision before the Board of Directors, he would have been entitled to present witnesses and evidence; to have a labor representative or legal counsel present; to cross examine witnesses; to request a recording of the hearing; and to have the hearing in closed or open session.  (DSUF #24.)  Before the Board, Pini would have been required to produce evidence of cause to terminate Plaintiff.  (DSUF #23.)  The Board was composed of five individuals, four of whom were formerly associated with the fire service.[5]  (DSUF #25.)  The Board could have overruled Pini's decision.   If they sustained it, Plaintiff could have petitioned a court for a writ of mandate per Cal. Code Civ. Pro. § 1094.6.  (DSUF #26–27.)

Plaintiff disputes that he could have received  – and that he was informed of his right to – a fair, impartial hearing from a Board of Directors led by Phillips, and that he was informed of the

---

[4] The complaint contains a more lengthy statement of allegations relative to Phillips.  The complaint states, among other things, that Phillips retaliated against Plaintiff by assigning him unachievable deadlines; trying to sabotage contract negotiations involving Plaintiff's union; repeatedly meeting with Plaintiff to accuse him of deception; and transferring Plaintiff from his position as Engine Captain to work on an ambulance, while instructing Plaintiff to continue to supervise his crew as Captain.  (Compl. ¶ 9.)  Plaintiff also states he filed a retaliation complaint against Phillips with the California Labor Commissioner, on December 20, 2010.  (PSUF #28.)  Defendants object that Plaintiff has not cited – and the Court does not locate – supporting evidence of a Cal. Lab. Comm. complaint within the filings in this case.

[5] The Court takes it the fifth person would be Phillips.

7

possibility of petitioning under Cal. Code Civ. P. § 1094.6.  (DSUF #23–24, 27.)

**III.  Procedural History**

Plaintiff filed the complaint in this Court on August 22, 2013.  (ECF No. 2.)  The complaint alleged the following five causes of action: (1) dismissal without a due process hearing; (2) wrongful termination in violation of public policy; (3) breach of implied covenant of good faith and fair dealing; (4) intentional infliction of emotional distress; and (5) disability discrimination.

By written order filed on April 10, 2014, this Court granted Defendants' motion to dismiss with leave to amend as to claims two and four, and granted Defendants' motion to dismiss with prejudice as to claims three and five.  Defendants did not address the first cause of action in their dismissal motion.  (ECF No. 14.)

Plaintiff did not file an amended complaint, meaning that this action is proceeding solely on the first cause of action: dismissal without a due process hearing.  Defendants have filed for summary judgment as to this cause of action; Plaintiff opposes the motion; and Defendants have filed a reply.  (ECF Nos. 23–25.)

**IV.  Standard of Law: Summary Judgment**

Summary judgment is appropriate when the moving party demonstrates no genuine dispute exists as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970).  Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis of its motion and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  *Id.* at 324.  Summary judgment should be entered against a party who does not make a showing sufficient to establish the existence of an element essential to that party's case, and on

1  which that party will bear the burden of proof at trial. *Id.* at 322.

2  If the moving party meets its initial burden, the burden then shifts to the opposing party to establish the existence of a genuine dispute as to any material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–87 (1986); *First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 288–89 (1968). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is instead required to proffer evidence of specific facts in the form of affidavits, or other admissible evidence, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, *id.* at 251–52.

To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank,* 391 U.S. at 289. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita,* 475 U.S. at 587 (quoting Rule 56(e) advisory committee's note on 1963 amendments). The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. *Anderson,* 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *Richards v. Nielsen Freight Lines,* 602 F.Supp. 1224, 1244–45 (E.D.Cal.1985), *aff ' d,* 810 F.2d 898 (9th Cir. 1987).

Finally, to demonstrate a genuine dispute of material fact that necessitates a trial, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita,* 475 U.S. at 586–87.

### V. Standard of Law: Due Process

"Precisely what procedures the Due Process Clause requires in any given case is a function of context … due process is not a technical conception with a fixed content unrelated to time, place and circumstances … Rather, it is flexible and calls for such procedural protections as the particular situation demands." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 983 (9th Cir. 1998) (internal quotation marks and citations omitted). Generally, the determination of which procedures satisfy due process in a given situation depends upon balancing the private interest affected by the official action, the risk of erroneous deprivation of the interests and the value of alternative procedures, and the government entity's interest. *Id.* (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

Further, "[a]lthough the pre-termination hearing need not be elaborate, some kind of hearing must be afforded the employee prior to termination. The essential requirements of this pre-termination process are *notice* and *an opportunity to respond*." *Clements v. Airport Auth. of Washoe Cty.*, 69 F.3d 321, 331–32 (9th Cir. 1995) (internal quotations marks and citations omitted). "[A] public employee dismissable only for cause [is] entitled to a very limited hearing prior to his termination, to be followed by a more comprehensive post-termination hearing." *Hibbs v. Dep't of Human Res.*, 273 F.3d 844, 873 (9th Cir. 2001) (citing *Gilbert v. Homar,* 520 U.S. 924, 929 (1997)).

Due process also requires a hearing before an impartial tribunal. *Clements,* 69 F.3d at 333 (*citing Ward v. Village of Monroeville,* 409 U.S. 57, 59–60 (1972)). "[W]here one member of a tribunal is actually biased, or where circumstances create the appearance that one member is biased, the proceedings violate due process." *Stivers v. Pierce,* 71 F.3d 732, 748 (9th Cir. 1995). The plaintiff "need not demonstrate that the biased member's vote was decisive or that his views influenced those of other members. Whether actual or apparent, bias on the part of a single member of a tribunal taints the proceedings and violates due process." *Id.* A plaintiff may waive due process rights by electing to forego a hearing; however, whether that waiver is effective depends in part upon whether the hearing would have been adequate. *Bignall v. North Idaho College,* 538 F.2d 243, 247 (9th Cir. 1976); *Byers v. New Plymouth Sch. Dist. No. 372*, No. 1:12-

cv-00230-EJL, 2013 WL 5943938, at *10 (D. Idaho Nov. 5, 2013).

The Court may also look to what procedures are required under state law when evaluating a federal due process claim. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 546 (1985) ("Our holding rests in part on the provisions in Ohio law for a full post-termination hearing"). In California, "[m]inimal standards of due process require that a public employee receive, prior to imposition of discipline: (1) [n]otice of the action proposed, (2) the grounds for discipline, (3) the charges and materials upon which the action is based, and (4) the opportunity to respond in opposition to the proposed action … The right to respond must afford the employee an opportunity to present his side of the controversy before a reasonably impartial and noninvolved reviewer who possesses the authority to recommend a final disposition of the matter." *Titus v. Civil Serv. Com.*, 130 Cal. App. 3d 357, 362–63 (1982). *See Skelly v. State Personnel Bd*., 15 Cal. 3d 194 (1975).

**VI. Analysis**

Defendants' motion for summary judgment raises eight issues, which the Court will now address.

A.  Issue 1: Whether Plaintiff states a claim under 42 U.S.C. § 1983

Defendants argue that Plaintiff has not adequately pleaded a § 1983 claim, apparently because the complaint does not list the § 1983 statute in its statement of the facts for this cause of action. A "[p]laintiff has no cause of action directly under the United State Constitution … [A] litigant complaining of a violation of a constitutional right must utilize 42 U.S.C. § 1983." *Azul-Pacifico, Inc. v. City of Los Angeles*, 973 F.2d 704, 705 (9th Cir. 1992). However, the complaint states violations for dismissal without due process under the Fifth and Fourteenth Amendments to the U.S. Constitution. (Compl. ¶¶ 20–21.) Plaintiff's opposition cites authorities in which the main issue is the deprivation of a property interest without due process, in violation of § 1983. *See Byers,* 2013 WL 5943938. (Opp'n at 5–7.) Thus, the Court will infer that the complaint seeks redress under § 1983.

The Court also construes the complaint to bring suit against Pini and Phillips in their individual capacities. *See Blaylock v. Schwinden*, 862 F.2d 1352, 1354 (9th Cir. 1988) ("damage

11

1  actions brought under 42 U.S.C. § 1983 are generally viewed as suits against the individual"). An
2  action for damages against Pini and Phillips in their official capacities would either be barred
3  under the Eleventh Amendment, or construed as an action against the Fire District itself and
4  hence redundant. *Id*.; *Luke v. Abbott*, 954 F. Supp. 202, 203 (C.D. Cal. 1997).

5        To establish a § 1983 claim, a plaintiff "must show that an individual acting under the
6  color of state law deprived him of a right, privilege or immunity protected by the United States
7  Constitution or federal law." *Levine v. City of Alameda,* 525 F .3d 903, 905 (9th Cir. 2008)
8  (*citing Lopez v. Dept. of Health Servs .,* 939 F.2d 881, 883 (9th Cir. 1991)). The parties do not
9  dispute that Plaintiff had a property interest in continued employment with the Fire District, or
10  that Pini or Phillips were acting under color of state law during Plaintiff's disciplinary and
11  termination process. Thus, the issue is whether Plaintiff was deprived of his property interest
12  without adequate process.

13      B. <u>Issues 2, 3, and 8: Whether Plaintiff received due process; whether Plaintiff waived
14         due process rights when he did not appeal; and whether Phillips was involved in the
15         decision to terminate</u>

16        Plaintiff received the following process prior to termination: Plaintiff received notice of
17  the proposed action on June, 29 2012, and was given ten days to respond in writing. Plaintiff
18  responded in writing. Plaintiff then attended a hearing with Pini on July 31, 2012, at which
19  Plaintiff had a labor representative present and had the opportunity to respond to the charges. On
20  August 2, 2012, Plaintiff was informed of Pini's intent to uphold the proposed discipline and
21  termination stated in the June 29th notice, and given ten days to appeal. That appeal would result
22  in a hearing before the Board. Plaintiff did not appeal. On August 24, 2012, Plaintiff was
23  terminated. Thus, Defendants argue: "Plaintiff was afforded adequate pre and post deprivation
24  due process with respect to his termination. Furthermore … Plaintiff failed to avail himself of the
25  appeal procedures that were available to him." (MSJ at 18.)

26        The Court first considers the adequacy of the pre-termination process afforded to Plaintiff.
27  In particular, the disputed issue raised by Plaintiff is whether his NorCal license would have been
28  valid but for intervention by Pini. The Court does not locate the exact date on which Pini spoke

with a NorCal EMS representative (Pini Dep. 36:2–19), relative to the August 15, 2012, deadline for compliance that Pini had set.  However, Defendants do not dispute that Pini in fact talked to NorCal EMS during this process; Pini testified he told the representative there was a defect in Plaintiff's license, and he indicated that discussion either caused or contributed to Plaintiff not having a valid NorCal license.  In summary, Plaintiff alleges that Pini set up an unreasonable deadline for obtaining a valid license, and even actively resisted Plaintiff's attempts to obtain a valid license.  The Court does not have before it any details on what occurred at the hearing before Pini, except for Pini's declaration that Plaintiff did not present evidence that he had a valid NorCal license or refute that he had allowed it to lapse.  (Pini Decl. ¶ 11.)  It is also disputed whether it was well known Fire District policy that someone other than the Fire Chief or Captain could sign off on a 202A Norcal accreditation form.  In support of their position, Defendants submit previous 202A forms submitted by Plaintiff, which a Captain or Fire Chief had signed.  However, this evidence does not totally negate Plaintiff's position that said policy was not well-known.  Phillips also testified that he talked to Pini about Plaintiff's discipline prior to termination.  Plaintiff has raised a valid dispute that Phillips was biased – and had retaliated at length in the past – due to Plaintiff's complaints to OSHA and Plaintiff's activity with his union.

If the inferences are drawn in favor of Plaintiff, Plaintiff raises a genuine dispute that the procedural safeguards afforded him prior to termination were inadequate.  Resolving this based on the instant briefs and submitted evidence would require the Court to make credibility determinations and weigh testimony.  However, at this stage the "court must not weigh the evidence or determine the truth of the matters asserted but only determine whether there is a genuine issue for trial." *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1131 (9th Cir. 1994).

The Court next considers the post-termination procedures available to Plaintiff. Defendants indicate that if Plaintiff had appealed Pini's decision before the Board of Directors, he would have been entitled to present any witnesses or documents, to have a labor representative or legal counsel present, to cross examine witnesses, to request a recording of the hearing, and to have the hearing in closed or open session.  Before the Board, Pini would have been required to

1  produce evidence of cause to terminate Plaintiff.  The Board was composed of five individuals,
2  four of whom were formerly associated with the fire service.  The Board could have overruled
3  Pini's decision.  If they sustained it, Plaintiff could have petitioned a court for a writ of mandate
4  per Cal. Code Civ. P. § 1094.6.  Plaintiff disputes that he could have received – and that he was
5  informed of his right to – a fair hearing from the Board of Directors and the possibility of
6  petitioning a Court under Cal. Civ. Code § 1094.6.

7  First, relative to the specific issue of whether Plaintiff was informed of his right to a
8  hearing, the August 2, 2012, notice from Pini states: "You may appeal or respond to this action in
9  writing within 10 days of this notice in accordance to [sic] the Public Employee Hearing Act … If
10 you appeal the above decision, a hearing will be set up with the Peninsula Fire District Board of
11 Directors for a final and binding decision."  (ECF No. 23-4 at 29.)  It is not clear whether Plaintiff
12 was informed in another way of the parameters of this hearing or a subsequent right to seek
13 redress in court.  However, it is not genuinely disputed that Plaintiff was aware he could appeal
14 Pini's August 2, 2012, decision to the Board.

15 Plaintiff has raised a genuine dispute as to whether he would receive an impartial hearing
16 from a Board led by Phillips.  Plaintiff states that he was in disfavor with Phillips because
17 Plaintiff complained to OSHA and because Plaintiff was active in his union.  Plaintiff has
18 submitted evidence that five days after he complained to OSHA, he and the other employee who
19 complained received an unsubstantiated warning from Phillips.  Plaintiff has alleged that Phillips
20 retaliated in other ways against Plaintiff in the past.  (Compl. ¶ 9.)  Phillips also testified that he
21 discussed with Pini the fact that Plaintiff was being disciplined, and it is a reasonable inference
22 that Phillips was generally aware of activity regarding personnel in the Fire District.  *See Stivers*,
23 71 F.3d at 748 ("[W]here one member of a tribunal is actually biased, or where circumstances
24 create the appearance that one member is biased, the proceedings violate due process … Whether
25 actual or apparent, bias on the part of a single member of a tribunal taints the proceedings and
26 violates due process").

27 For the same reasons, the instant claim may not be defeated at the summary judgment
28 phase on the premise that Plaintiff waived his appeal.  Drawing the inferences in Plaintiff's favor,

14

there is a genuine dispute as to whether the Board of Directors hearing the appeal would be impartial and thus provide adequate process. *See Bignall*, 538 F.2d at 247; *Byers*, 2013 WL 5943938, at *10. The Court also notes that Plaintiff was not given ten days from his termination on August 24, 2012, to appeal to the Board. Rather, Plaintiff was given ten days from Pini's August 2, 2012, decision to implement the prior notice of discipline and termination, which included an August 15, 2012, deadline for Plaintiff to secure his license.[6] Thus, August 12 would be the deadline for Plaintiff to appeal to the Board, but for three days after that point until August 15, Plaintiff would still have the ability to secure his license without being fired. In other words, Plaintiff had to decide whether to appeal, prior to the deadline for compliance and possibly before Plaintiff knew whether he could comply. The timing of Plaintiff's deadline to appeal versus the deadline for Plaintiff to comply raises uncertainty as to whether Plaintiff waived his due process rights.

Relative to Defendants' argument that Phillips was not involved in his termination, "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (citing *Sims v. Adams*, 537 F.2d 829 (5th Cir. 1976)). "The requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Id.* at 743–744 (citing *Beverly v. Morris*, 470 F.2d 1356 (5th Cir. 1972)).

For the reasons discussed regarding Phillips' alleged retaliation against Plaintiff in the past, and allegations that Phillips had a general knowledge of Plaintiff's discipline and had discussed it with Pini, the Court also finds Plaintiff has a raised a genuine issue as to whether Phillips personally participated in Plaintiff's termination.

For the stated reasons, the Court concludes that Plaintiff has raised a triable issue as to 1)

---

[6] Section 905.3 of the Fire District Rules and Regulations provides: "The employee will have an administrative hearing with the Fire Chief. If the employee is still dissatisfied with the action being taken, an appeal may be filed with the Board of Directors." (ECF No. 23-4 at 16.)

whether he was afforded due process relative to his termination; 2) whether he waived his due process right by not appealing Pini's decision to terminate him; and 3) whether Phillips was personally involved in the decision to terminate him.

### C. Issues 4 through 7: *Monell* liability and Defendant Fire District

Under the *Monell* doctrine, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 694 (1978). Defendants propose – and seek to reject – four possible routes for liability on the part of the Fire District. Plaintiff's opposition does not respond specifically to these arguments. For the reasons stated below, the Court grants Defendants' summary judgment motion as to Defendant Fire District.

First, Defendants argue Plaintiff has not adequately alleged an "official policy" on the part of the Fire District that resulted in Plaintiff's termination without due process. *See Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008). Defendants submit that the process Plaintiff underwent – including a written notice of intended discipline, his right to respond in writing, a subsequent hearing, a written statement of reasons for the termination decision, and the chance to appeal before the Board of Directors – is codified in the applicable Fire District rules, regulations, and policies. The relevant portions of the "Fire District Rules and Regulations" and "Policy Handbook", attached to Defendants' motion, generally describes the aforementioned process. (ECF No. 23–4 at 9–17.) Plaintiff has stated that "Pini and Phillips established, interpreted and enforced their own vision of the rules." (DSUF 69–70.) However, Plaintiff's clearest position is that Pini and Phillips acted within their discretion irrespective of what Fire District policies were in place. It is possible to imagine a different type of discipline and termination policy that, in hindsight, may have resulted in Plaintiff not being terminated. However, Plaintiff identifies no office Fire District policy which was the "moving force" behind his termination. *Monell*, 436 U.S. at 694.

Second, Defendants argue that Plaintiff has not adequately alleged a longstanding practice or custom which constitutes official operating procedure, which resulted in Plaintiff's termination. For example, Plaintiff has not identified evidence of other terminations without due process. *See Giellette v. Delmore*, 979 F.2d 1342, 1349 (9th Cir. 1992). Defendants state that Plaintiff was the first non-probationary employee to be terminated from the Fire District (and hence impossible for Plaintiff to claim he is one among many employees terminated without due process); Plaintiff has stated similarly that "[n]o other employee was fired for failing to renew a Paramedic or EMT license." (PSUF #12.) The Court agrees that Plaintiff has not identified a longstanding practice or custom within the Fire District which resulted in Plaintiff's termination; the only instance of termination cited by Plaintiff is his own.

Third, Defendants argue Plaintiff cannot show Pini was an official who: "(1) had final policymaking authority 'concerning the action alleged to have caused the particular constitutional or statutory violation at issue' and (2) was the policymaker for the local governing body for the purposes of that particular act." *Cortez v. County of Los Angeles*, 294 F.3d 1186, 1189 (9th Cir. 2002) (citing *Weiner v. San Diego County*, 210 F.3d 1025, 1028 (9th Cir. 2000)). Defendants submit that, per the applicable Fire District rules, regulations, and policies, the Fire Chief is not responsible for setting Fire District policy. Rather, the Board is responsible for setting policy, including policy relative to employment, termination, and appeals. *See e.g.* Fire District Policy 5040.1 (actions by the Board include the "[a]doption or rejection of regulations or policies"); Policy 2300.1.4 (the Fire Chief "seeks to carry into effect the expressed policies of the Board"). (ECF No. 23-4 at 9, 11.) Pini was the person who officially terminated Plaintiff. All notices of discipline and termination in Summer 2012 were issued by Pini, and the hearing was before Pini. Plaintiff has not produced evidence that Pini has policymaking authority, and it is a reasonable inference that, as the Fire District regulations state, the Board sets policy.[7] Thus, Plaintiff has not sufficiently claimed *Monell* liability on the part of the Fire District on these grounds.

---

[7] More accurately: "Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority, and of course, whether an official had final policymaking authority is a question of state law." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). Plaintiff has not given the Court any legal or factual authority to support the position that, under state law, Pini set policy and/or the Board did not.

1    Fourth, Defendants argue that Plaintiff cannot show that a "final policymaker 'ratified' a
2    subordinate's actions." *Christie v. Iopa*, 176 F.3d 1231, 1238 (9th Cir. 1999) (citing *City of St.*
3    *Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)).  "To show ratification, a plaintiff must prove that
4    the authorized policymakers approve[d] a subordinate's decision and the basis for it." *Id.* at 1239
5    (internal quotation marks omitted).  Defendants argue the Board could not have ratified Pini's
6    decision to terminate because Plaintiff did not appeal.  Again, Plaintiff has not responded to
7    Defendants' argument, but a possible response would be that Phillips, the Chairman of the Board,
8    ratified Pini's actions even if the full Board of Directors did not.  Plaintiff has alleged that Phillips
9    retaliated against Plaintiff while Phillips was acting fire chief, and Phillips had discussed
10   Plaintiff's discipline with Pini prior to Plaintiff's termination.

11   Though a closer issue, the Court agrees that Plaintiff's allegations do not implicate
12   Phillips' status as a policy-maker.  In *Praprotnik*, the Supreme Court indicated that the underlying
13   concern for a ratification-theory is still whether the *policy* of the government is implicated by the
14   official's action.  There, the Supreme Court considered policy-makers' delegation of authority to
15   subordinates, and their acquiescence to subordinates' decisions.  In rejecting liability on the part
16   of the government, *Praprotnik* held: "the city cannot be held liable under § 1983 unless
17   respondent proved the existence of an unconstitutional municipal policy. Respondent does not
18   contend that anyone in city government ever promulgated, or even articulated, such a policy. Nor
19   did he attempt to prove that such retaliation was ever directed against anyone other than himself."
20   *Prapprotnik*, 485 U.S. at 128.  "It would be a different matter if a particular decision by a
21   subordinate was cast in the form of a policy statement and expressly approved by the supervising
22   policymaker. It would also be a different matter if a series of decisions by a subordinate official
23   manifested a custom or usage of which the supervisor must have been aware." *Id.* at 130.  Here,
24   Plaintiff has not argued that Phillips or the Board promulgated a specific policy that led to his
25   termination, or that his termination was "cast in the form of a policy statement," or that decisions
26   relative to his termination "manifested a custom or usage" on the part of the Fire District. *Id.*
27   Rather, the clearest interpretation of Plaintiff's position is that he was terminated without due
28   process due to personal antagonism on the part of Pini and Phllips.  Plaintiff also does not

particularly allege anything about Phillips' status as a board member that was the reason for Phillips influencing Pini and causing Plaintiff's termination. *See also Pembaur v. City of Cincinnati* 475, U.S. 469, 483–84 (1986) ("[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question"). *Id.* at 483–84. Plaintiff does not allege that Phillips made a deliberate choice from among various courses of action. Ultimately, Plaintiff does not identify any Fire District policy, practice, or custom that is implicated by Phillips' position as Chairman of the Board, and which was the "moving force" behind Plaintiff's termination. *Monell*, 436 U.S. at 694.

For the stated reasons, Defendants' motion for summary judgment motion is granted as to Defendant Fire District.

**VII. Conclusion**

For the stated reasons, Defendants' motion for summary judgment (ECF No. 23) is DENIED as to Defendants Pini and Phillips. The motion is GRANTED as to Defendant Fire District; Defendant Fire District is hereby dismissed from this action.

Dated: March 30, 2016

Troy L. Nunley
United States District Judge